UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TONY WALKER,

                Plaintiff,

                v.

FRANK KENDALL III,
Secretary of the Air Force,

                Defendant.

Civil Action No. 22-0119 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

Plaintiff Tony Walker has sued his former employer, the Secretary of the U.S.

Department of the Air Force ("Air Force"), in his official capacity, alleging racial discrimination

and retaliation for plaintiff's Equal Employment Opportunity ("EEO")-protected activity, under

Title VII of the Civil Rights Act of 1964 ("Title VII").  42 U.S.C. § 2000e *et seq.*; *see* Compl.

¶¶ 4, 36, 45, ECF No. 1.  Pending before the Court is defendant's Motion to Dismiss ("Def.'s

Mot."), ECF No. 9, on the grounds that plaintiff failed to exhaust his administrative remedies and

has stated no plausible claim on which relief may be granted.  For the reasons set forth below,

defendant's motion to dismiss is granted for failure to state a claim.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an African American man, worked for the Air Force as a computer engineer at a

GS-13 level in the Defense Cyber Crime Center from 2001 to 2016, when he was removed from

his position.  Compl. ¶¶ 15–16; *id.*, Ex. 1, U.S. Equal Employment Opportunity Commission

Decision ("EEOC Dec.") at 5, ECF No. 1-1.[1]  Plaintiff alleges that between 2010 and 2014 he

---

[1]    "In deciding a motion to dismiss, a court may . . . consider documents attached to or incorporated
in the complaint."  *He Depu v. Yahoo! Inc.*, 950 F.3d 897, 901 (D.C. Cir. 2020) (internal quotation omitted); *see also*

"expressed interest in being promoted to a GS-14" position, including by requesting, on March 8, 2010, "a promotion from a GS-13 to a GS-14" in in a written communication to the Executive Director of the Defense Cyber Crime Center. *Id.* ¶¶ 18–19. In response, plaintiff's supervisors and the Human Resources department informed him that no positions were available at that time, explained the process for promotion to a GS-14 position, and outlined steps for plaintiff to take to be considered for such a position. *Id.* ¶¶ 20–23. Plaintiff does not allege that he took these steps or further pursued a promotion. Indeed, he did not apply for any GS-14 positions throughout his tenure with the Air Force. EEOC Dec. at 6.

Nonetheless, he asserts that he "was discouraged [from] formally submit[ting] an application for promotion" in these interactions with his supervisors, and that "[s]imilarly situated co-workers" of different races were "not treated in the manner in which Plaintiff was." Compl. ¶ 37. Specifically, in 2017, plaintiff allegedly learned that "less qualified Caucasian coworkers" had been promoted to GS-14 positions between 2010 and 2014 "using a direct hire process with no vacancy announcements in violation of Office of Personnel Management (OPM) rules for granting direct hiring authority." *Id.* ¶ 32. Plaintiff contends that the agency's decision to promote these individuals rather than him to GS-14 positions occurred because of discrimination based on his race and retaliation based on his previous EEO-protected activities. *Id.* ¶¶ 36, 45.[2]

---

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment."). Plaintiff's complaint attaches as an exhibit the Equal Employment Opportunity Commission Office of Federal Operations decision in the administrative proceedings that plaintiff pursued before filing the instant suit, and that decision is therefore appropriately considered here. *Cf. Menoken v. Dhillon*, 975 F.3d 1, 8 (D.C. Cir. 2020) (finding district court "erred by relying on two documents outside the complaint as dispositive evidence of the nature of [plaintiff's] accommodation request" after noting the "absence of allegations in the complaint about the precise accommodation [plaintiff] requested").

[2]     Plaintiff identifies other EEO-protected activities in which he engaged during his employment with the Air Force as the following: (1) plaintiff's initiation of a failure to promote action in 2006; and (2) plaintiff's filing of two administrative complaints in 2013 against the agency. Compl. ¶ 44. While plaintiff briefly mentions the conduct

Plaintiff filed, on February 27, 2017, a formal administrative complaint with the U.S.

Equal Employment Opportunity Commission ("EEOC"), asserting eight claims against the Air

Force for racial discrimination and retaliation, including, as relevant here, as to his non-

promotions to GS-14 between 2010 and 2014, while allegedly less qualified Caucasian co-

workers were promoted instead.  *See* EEOC Dec. at 1–2.  Following an investigation into the

claims, an administrative judge entered judgment in favor of the Air Force, finding no

discrimination.  *Id.* at 2.  Plaintiff appealed to the EEOC Office of Federal Operations ("EEOC-

OFO"), Compl. ¶ 9, which, in October 2021, affirmed the decision finding no discrimination,

EEOC Dec. at 6, 8.  EEOC-OFO found adequate support for the administrative judge's

determination that Air Force "management officials articulated legitimate, non-discriminatory

reasons" for plaintiff's non-promotions and that plaintiff had "simply provided no evidence to

support his claim that his race or retaliatory animus played any role whatsoever."  EEOC Dec. at

6.

Within three months after issuance of the EEOC Decision, plaintiff initiated the instant

suit, on January 18, 2022, focusing on the Air Force's alleged refusal to promote him to GS-14

between 2010 and 2014, Compl. at 1, in two claims alleging that the non-promotions were

motivated by plaintiff's race, amounting to discrimination under Title VII, and retaliation for his

previous participation in EEO-protected activity, in violation of Title VII, *id.* ¶¶ 34–50.

Defendant timely moved, on June 17, 2022, for dismissal of the complaint, under Federal

Rule of Civil Procedure 12(b)(6), *see* Def.'s Mot., but plaintiff failed to file a timely response,

prompting an Order to Show Cause why defendant's motion should not be granted as conceded

---

underlying those administrative actions in the instant complaint, *see id.* ¶¶ 25–31; *see also* Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 6, ECF No. 12, he acknowledges that those alleged discriminatory acts do not support his Title VII claims in the instant suit due to untimeliness, Compl. at 1.  Accordingly, only plaintiff's alleged non-promotions from 2010 to 2014, which form the factual basis for the instant suit, are discussed.

on July 8, 2022, *see* Minute Order (7/8/2022).  Plaintiff responded and, after seeking a further

extension, eventually filed an opposition on August 12, 2022.  *See* Pl.'s Resp. Order to Show

Cause, ECF No. 10; Pl.'s Mot. for Ext. of Time, ECF No. 11; Pl.'s Opp'n Def.'s Mot. Dismiss

("Pl.'s Opp'n"), ECF No. 12.  Shortly thereafter, plaintiff's counsel moved to withdraw, which

motion was granted, *see* Minute Order (9/23/2022), and plaintiff is now proceeding *pro se*.

Plaintiff thereafter filed a motion for summary judgment, *see* Pl.'s Mot. Summ. J., ECF

No. 18, for which briefing was stayed, at defendant's request, *see* Def.'s Mot. to Stay, ECF No.

19, pending adjudication of the previously filed motion to dismiss, *see* Minute Order

(10/20/2022), since resolution of the latter could moot the former.  Briefing on the pending

motion to dismiss was completed on September 8, 2022.  *See* Def.'s Reply Supp. Mot. Dismiss

("Def.'s Reply"), ECF No. 14.  This motion is now ripe for resolution.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a]

plaintiff need not make 'detailed factual allegations,'" but the "complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *VoteVets*

*Action Fund v. United States Dep't of Veterans Affairs*, 992 F.3d 1097, 1104 (D.C. Cir. 2021)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts

that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *see also Rudder v.*

*Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Consequently, "a complaint survives a motion to

dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the

other advanced by the plaintiff, both of which are plausible.'" *VoteVets Action Fund*, 992 F.3d at

1104 (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015))

(alteration in the original).

In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint,

accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at

555; *see also Atchley, v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  Courts do

not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are

unsupported by the facts set out in the complaint.'"  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir.

2015) (alteration in original) (citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*,

477 F.3d 728, 732 (D.C. Cir. 2007)).

## III.   DISCUSSION

Defendant contends that dismissal of the complaint is warranted because plaintiff failed

timely to exhaust his administrative remedies and, in any event, does not state viable claims of

discrimination and retaliation.  While defendant is correct that plaintiff failed to exhaust his

administrative remedies, which would ordinarily warrant dismissal of his claims, defendant

waived this defense by failing to bring up timeliness in the administrative proceedings.

Regardless, plaintiff fails to plead allegations sufficient to render his discrimination and

retaliation claims plausible, requiring dismissal of his complaint.

### A.   Exhaustion of Administrative Remedies

Defendant argues that, because plaintiff did not initiate his administrative proceedings

until several years after the non-promotions at issue—long after his deadline to do so under

EEOC regulations—he failed properly to exhaust his administrative remedies and thus cannot

pursue the same claims in federal court.  *See* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.")

at 10, ECF 9-1.[3]   Plaintiff counters that, although the non-promotions occurred between 2010

and 2014, the 45-day period he had to initiate proceedings was tolled until 2017, when he learned

that "less qualified Caucasian coworkers were promoted to GS-14" during those years.  Compl.

¶ 32; *see* Pl.'s Opp'n at 5–6.

### 1.       *Exhaustion Requirement Generally*

"Before a federal employee can file suit against a federal agency for violation of Title

VII, the employee must run a gauntlet of agency procedures and deadlines to administratively

exhaust his . . . claims." *Crawford v. Duke*, 867 F.3d 103, 105 (D.C. Cir. 2017); *see also* 42

U.S.C. § 2000e-16(c).  The exhaustion requirement "serves the important purposes of giving the

charged party notice of the claim and narrowing the issues for prompt adjudication and

decision," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up), and it

"ensure[s] that the federal courts are burdened only when reasonably necessary," *Brown v.

Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).  The EEOC has issued detailed procedures to govern the

administrative resolution of employment discrimination claims against federal agencies under

Title VII.  *See* 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105.  As relevant here, these

procedures require that employees "who believe they have been discriminated against . . . must

consult a[n] [EEO] Counselor prior to filing a complaint in order to try to informally resolve the

matter."  29 C.F.R. § 1614.105(a).  This initial contact with an EEO Counselor must take place

"within 45 days of the date of the matter alleged to be discriminatory."  *Id.* § 1614.105(a)(1).

Exhaustion inquiries focus on each discrete discriminatory act that is alleged by an

employee.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002).  "[D]iscrete

---

[3]       "Title VII's exhaustion requirements are not jurisdictional," *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4
(D.C. Cir. 2011), and, "[a]ccordingly, a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can
be granted is the appropriate vehicle to challenge an alleged failure to exhaust administrative remedies under Title
VII," *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 58 (D.D.C. 2011) (internal quotations and citations omitted).

discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed [administrative] charges." *Id.* at 113.  Thus, a Title VII complainant "must timely exhaust administrative remedies *for each discrete act alleged*[,]' even if the acts are related." *Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014) (Jackson, K.B., J.) (quoting *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013)) (emphasis in original).

### 2.      *Plaintiff Failed Timely to Exhaust His Claims*

Plaintiff alleges that the Air Force failed to promote him to a GS-14 position between 2010 and 2014, despite his expressed interest and qualification for such a promotion, for racially discriminatory and retaliatory reasons.  Compl. at 1.  Thus, in this case, the "discrete discriminatory acts," *Morgan*, 536 U.S. at 110, occurred between 2010 and 2014, when the Air Force, instead of promoting plaintiff, promoted several "less qualified Caucasian co-workers" to GS-14 positions via direct hiring processes.  Compl. at 1.  When plaintiff deduced that his promotions were refused for racially discriminatory and retaliatory reasons is irrelevant, for "[n]otice or knowledge of discriminatory motivation is not a prerequisite for a cause of action to accrue. . . . On the contrary, it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations." *Fortune v. Holder*, 767 F. Supp. 2d 116, 122 (D.D.C. 2011) (quoting *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 558 (10th Cir. 1994)); *Moini v. LeBlanc*, 456 F. Supp. 3d 34, 45 (D.D.C. 2020) (explaining same and collecting cases).  Thus, plaintiff's claims accrued from the dates the Air Force refused to promote plaintiff to GS-14 following his requests between 2010 and 2014, at the same time his less qualified coworkers were allegedly receiving the promotions.

Plaintiff, however, did not file his administrative complaint until 2017, three-to-seven years after the non-promotions challenged.  *See* EEOC Dec. at 1.  Defendant therefore argues

that plaintiff did not timely initiate those proceedings by contacting an EEO Counselor within 45

days of the alleged non-promotions, and thus failed properly to exhaust his administrative

remedies.  *See* Def.'s Mem. at 9.  Plaintiff does not dispute the multi-year delay, but nonetheless

contends that "[t]his is . . . not a case where the Plaintiff should be held to the 45 day filing

requirement."  Pl.'s Opp'n at 11.  Such exceptions do exist, as courts will toll the applicable

filing period when the plaintiff "did not know and reasonably should not have [] known that the

discriminatory matter or personnel action occurred."  *Stewart v. Ashcroft*, 352 F.3d 422, 425

(D.C. Cir. 2003) (quoting 29 C.F.R. § 1614.105(a)(2)) (alteration in original)).  In plaintiff's

view, this is one such case because he neither knew nor had reason to know that he had been

denied promotions until 2017, when he learned that "less qualified Caucasian coworkers" had

been promoted over him to GS-14 positions.  Compl. ¶ 32; Pl.'s Opp'n at 5–6.

      Plaintiff offers nowhere in his pleadings any explanation as to why he did not learn until

2017 about the non-promotions that had occurred between 2010 and 2014.  To have allegedly

less qualified coworkers promoted around him to GS-14 positions without him noticing over a

four-year period somewhat strains credulity.  To trigger any tolling, plaintiff must provide more

than a bare assertion of his lack of knowledge to establish that he "did not know *and reasonably*

*should not have [] known*," 29 C.F.R. § 1614.105(a)(2) (emphasis added), until 2017 that

between 2010 and 2014 he was denied promotions while his allegedly less qualified Caucasian

coworkers were granted promotions.  As the D.C. Circuit has explained, "to toll the 45-day

limitation period . . . plaintiff has a responsibility, when possible, to further investigate a

personnel action in order to determine whether the action was discriminatory."  *Miller v.*

*Hersman*, 594 F.3d 8, 12 (D.C. Cir. 2010).  For instance, tolling has been deemed appropriate

where a plaintiff alleged sufficient facts to establish that "[p]laintiff had no way of knowing"

defendant's discriminatory interview policy "even existed" or the date competing selectees were hired over her because such information was not made public, "especially so" when "plaintiff was out of office for an extended period of time." *Silver v. Leavitt*, No. 05-cv-968 (JDB), 2006 WL 626928, at *8 (D.D.C. Mar. 13, 2006). Such additional factual allegations are entirely absent here.

Furthermore, even the *Silver* decision noted that "[t]o be sure, there is a threshold of time beyond which it may be viewed as unreasonable for a plaintiff not to have inquired as to the status of a pending employment application" and thus become aware of her non-selection, but concluded that the period of four months for plaintiff to realize she had not been selected in that case was not yet past that threshold. *Id.* Here, plaintiff's delay of three-to-seven years in discovering that his requests between 2010 and 2014 for promotion to GS-14 had been denied is not similarly reasonable, especially when he alleges no facts indicating that the information would not have been readily discoverable.

Indeed, the complaint sets forth sufficient allegations showing that plaintiff was in fact on notice that the Air Force was not promoting him at the time that he made the requests, between 2010 and 2014. For example, he alleges that he was told at one unspecified point that "if he wanted a promotion, he would have to agree to a 'desk audit' to determine if his work duties" merited one, and that he was "discouraged [from] formally submit[ting] an application for promotion" after he "expressed interest in a promotion for which he was qualified." Compl. ¶¶ 23, 37. If true, both allegations should have put plaintiff on notice that his desired promotions were not being granted at the time those decisions were made. At the very least, these allegations indicate that plaintiff suspected he was not being seriously considered for promotion to GS-14, and such suspicions have in other cases been enough to trigger the administrative

filing period.  *See, e.g.*, *McCants v. Glickman,* 180 F. Supp. 2d 35, 41–42 (D.D.C. 2001) (finding

that discrimination claim of plaintiff who "suspected discrimination during [his] interview"

accrued on the date of the interview, although plaintiff waited until more evidence came to light

before initiating his administrative proceedings).  In short, defendant is correct that plaintiff

either knew or reasonably should have known about the non-promotions at issue far earlier than

2017, and thus that plaintiff failed to make timely contact with an EEO Counselor within 45 days

of the discriminatory actions giving rise to the instant claims.

Plaintiff's failure to exhaust his administrative remedies in a timely fashion, however,

does not resolve this asserted basis for dismissal.  "Although agencies do not waive a defense of

untimely exhaustion merely by accepting an investigating a discrimination complaint, . . . if they

not only accept and investigate a complaint, but also decide it on the merits—all without

mentioning timeliness—their failure to raise the issue in the administrative process may lead to

waiver of the defense when the complainant files suit." *Bowden v. United States*, 106 F.3d 433,

438 (D.C. Cir. 1997).  The EEOC decision attached to the complaint confirms that plaintiff's

claims regarding lack of promotion to GS-14 were both investigated and decided on the merits.

EEOC Dec. at 6.  Notably, that treatment stands in contrast to that of another of plaintiff's

administrative claims, for which the EEOC "f[ound] no reason to disturb the Agency's dismissal

of this claim as untimely raised." *Id.* at 2 n.2.  Thus, the first time defendant has raised an

exhaustion defense to plaintiff's non-promotion is in the instant suit, rather than in the course of

the underlying administrative proceedings—exactly the situation the D.C. Circuit has suggested

may lead to a waiver of that defense. *Bowden*, 106 F.3d at 438.

At the same time, the *Bowden* Court acknowledged that it "d[id] not intend to create a

sweeping principle concerning waiver of administrative time limits under Title VII." *Id.* at 439.

10

Indeed, the facts underlying the finding of waiver in *Bowden* are readily distinguishable since the

D.C. Circuit found the agency had itself egregiously prolonged the resolution of plaintiff's

claims and raised the exhaustion argument only belatedly at an advanced stage of the federal

litigation. *See id.*  Nonetheless, the Court's primary rationale applies in full force here: Where

the agency "responded to the merits of [the employee's administrative] complaint without ever

questioning its timeliness, . . . the agency now has no legitimate reason to complain about a

judicial decision on the merits," for if "it been concerned that information needed to resolve [the

employee's] complaint was stale or that deciding his case would upset settled expectations—

traditional objectives of statutes of limitations—it could easily have raised the [time] limitation

during the administrative process." *Id.* at 438–39.  As such, consistent with the other courts that

have applied *Bowden* under similar circumstances, *see Nurriddin v. Bolden*, 674 F. Supp. 2d 64,

86–88 (D.D.C. 2009) (collecting cases), plaintiff's claims will not be dismissed for lack of

exhaustion, given that these same claims were considered on the merits in the underlying

administrative proceedings without any untimeliness concern raised.

> **B.      Plaintiff Fails to State Plausible Claims to Relief Under Title VII**

The factual allegations contained in the complaint, accepted as true, fall short of plausibly

establishing plaintiff's entitlement to relief on his Title VII discrimination and retaliation claims,

warranting dismissal of this complaint under Rule 12(b)(6) for failure to state a claim.  Each

claim is addressed separately below.

> **1.      *Count I: Title VII Discrimination Based on Race***

Defendant argues that plaintiff's allegations do not amount to a *prima facie* claim of Title

VII racial discrimination for the simple reason that plaintiff never alleges that he applied for a

promotion to GS-14, which is generally a required element in failure-to-promote claims as

asserted here.  Def.'s Mem. at 11–12.  Plaintiff does not dispute the absence of such an allegation but contends that an alternate test for the sufficiency of his claim should be devised and applied in this case.  Pl.'s Opp'n at 7–8.  The Court declines plaintiff's invitation to diverge from the well-settled requirements for a *prima facie* claim of Title VII discrimination for failure-to-promote.

"Title VII prohibits the federal government from discriminating in employment on grounds of race or sex, and from retaliating against employees for engaging in activity protected by Title VII."  *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (internal citations omitted).  Under Title VII, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *see also Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008); *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Adverse employment actions include the failure to promote, as plaintiff alleges he suffered in this case.  *See Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011) (listing examples of adverse employment actions).

Where, as here, a plaintiff alleges no direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), guides the analysis of the circumstantial factual allegations asserted by the plaintiff.  To establish a *prima facie* case of discrimination under this framework "[i]n a . . . refusal-to-promote discrimination case," the plaintiff bears the initial burden of showing that "(i) the employee 'belongs to a racial minority' or other protected class; (ii) the employee 'applied and was qualified for a job for which the employer was seeking applicants'; (iii) despite the

employee's qualifications, the employee 'was rejected'; and (iv) after the rejection, 'the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.'"  *Brady*, 520 F.3d at 493 n.1 (quoting *McDonnell Douglas*, 411 U.S. at 802).

Plaintiff falls short of meeting this burden because, as is clear from the face of the complaint and from the attached EEOC-OFO administrative decision, during the period at issue, plaintiff never applied for any GS-14 positions nor undertook the process he was told was necessary for such a promotion.  To be precise, plaintiff's allegation is only that he "expressed interest" in applying and at one point wrote to the Director of the Air Force Defense Cyber Crime Center requesting a promotion in general terms.  Compl. ¶¶ 18–19.  He goes on to allege that his supervisors and the Human Resources Department responded with information about how plaintiff could apply to be promoted to a GS-14 position.  *Id.* at ¶¶ 20–23.  Strikingly absent, however, is any allegation that plaintiff ever attempted to act on that information, *see generally* Compl., and, indeed, the administrative investigation into plaintiff's claims revealed "no evidence that [plaintiff] applied for any GS-14 positions during the relevant period," EEOC Dec. at 6.

Likely keenly aware of this critical shortcoming in his claims, plaintiff urges that the aforementioned four-prong test for a *prima facia* case of discriminatory refusal-to-promote be jettisoned, because "this case is not a typical scenario of an employer using a competitive posting to fill a promotion position," in light of his allegation that others were hired to GS-14 positions "using a direct hire process with no vacancy announcements."  Pl.'s Opp'n at 7; Compl. ¶ 32.  In support of his position, he relies on *Elam v. Board of Trustees of the University of the District of Columbia*, 530 F. Supp. 2d 4 (D.D.C. 2007) and *Stella v. Mineta*, 284 F.3d 135 (D.C. Cir. 2002).  Pl.'s Opp'n at 7.  In both cases, the four-part analytical framework was flexibly applied in a

manner to fulfill the "important function of the prima facie case [] to weed out the most common

lawful reasons for the defendant's action, such as the plaintiff's lack of qualifications or the

elimination of the position altogether." *Stella*, 284 F.3d at 145.

Those cases are inapposite. Unlike plaintiff, the complainants in *Stella* and *Elam* had

filed applications for the positions for which they were not hired. *See* 530 F. Supp. 2d at 7–8;

284 F.3d at 140. Those cases concerned only the fourth requirement for a *prima facie* failure-to-

promote claim and held that a plaintiff need not allege "that she was replaced by a person outside

her protected class." *Stella*, 284 F.3d at 146; *see also George v. Leavitt*, 407 F.3d 405, 412–13

(D.C. Cir. 2005) ("In *Stella*, we made it clear that 'a plaintiff in a discrimination case need not

demonstrate that she was replaced by a person outside her protected class in order to carry her

burden of establishing a prima facie case under *McDonnell Douglas* . . . .'"); *Mastro v. Potomac*

*Elec. Power Co.*, 447 F.3d 843, 851 (D.C. Cir. 2006) (explaining that "we have expressly

rejected as immaterial a requirement that the plaintiff be replaced by an individual outside her

protected class" in assessing a plaintiff's *prima facie* case). This case does not present that

situation since plaintiff does allege that the promotion he requested, though did not formally

apply for, was filled by Caucasian coworkers outside his protected class. Compl. ¶ 32. The

*Stella* line of cases does not relieve a plaintiff asserting a failure-to-promote discrimination claim

from alleging that he actually sought a promotion to establish a *prima facie* case.

Furthermore, even under a flexible application of elements of a *prima facie* case of

discriminatory non-promotion, plaintiff's allegations fall short. Given the specific requirements

for government hiring and promotion on the GS-scale, asking strictly whether plaintiff applied

for any particular vacancy for which the government was seeking applicants, as in the usual

formulation of the *McDonnell Douglas* factors in the non-promotion context, may well be the

wrong inquiry. *See Brady*, 520 F.3d at 493 n.1. Promotions with a step-up on the GS-scale may not always work that way; employees may, as in this case, seek an increase in grade level from a job they already hold, and that may entail complying with internal requirements to be considered for a promotion rather than applying for a vacant position in a competitive process.

Yet, the appropriate course when confronting scenarios in which the traditional factors are an imperfect fit is not to jettison elements of the *prima facie* case entirely, as plaintiff urges. *See* Pl.'s Opp'n at 7–8 (arguing that the required element of making an application should be waived completely). Rather, *Stella* and its progeny instruct that the elements should be adapted when required under the circumstances properly to eliminate common, lawful reasons for a defendant's action and to give rise to a plausible inference of discrimination. *See, e.g.*, *Gentry v. McDonough*, 588 F. Supp. 3d 91, 96 (D.D.C. 2022) (discussing occasions on deviations from the usual four-part framework have applied, because strict adherence would have failed to capture an otherwise-viable creation of an inference of discriminatory action). Here, plaintiff's allegations make clear that even if vacancies for GS-14 positions to which plaintiff could have applied were not posted, he was advised of certain requirements to fulfill for eligibility for a GS grade increase. *See* Compl. ¶¶ 21, 23 (alleging that his supervisor "sent Plaintiff emails explaining how one can be promoted to a GS-14" and that "Human Resources sent an email to [Plaintiff] stating that if he wanted a promotion, he would have to agree to a 'desk audit' to determine if his work duties merit a promotion").

Thus, an obvious lawful reason for plaintiff's non-promotions between 2010 and 2014 remains readily available under plaintiff's allegations: that plaintiff himself chose not to follow his supervisors' guidance that would have allowed him to be considered for GS-14 positions, while the allegedly "less qualified Caucasian coworkers" did comply with the applicable

15

requirements and were duly considered.  Departing from the traditional framework here by relieving plaintiff of his responsibility to show he took the necessary steps to "apply" for a promotion (whether that means submitting a formal application for a vacant position or taking the necessary steps to be considered for an increase in grade within his current job) would fail to "weed out" such a reason and would not establish a *prima facie* case of discrimination, *Stella*, 284 F.3d at 145, and as such is not warranted under these circumstances.

The allegations in plaintiff's complaint fall short of making out a *prima facie* case of discriminatory non-promotion.  Defendant's motion to dismiss plaintiff's racial discrimination claim is therefore granted.

### 2.  *Count II: Retaliation in Violation of Title VII*

Defendant argues that plaintiff's allegations do not amount to a *prima facie* claim of retaliation under Title VII because he fails to allege a sufficient causal connection between the alleged non-promotions and his EEO-protected activity.  Def.'s Mem. at 12–15.  Once again, plaintiff does not dispute the lack of such causal allegations, and instead argues for a relaxed pleading standard, under which he may simply assert the existence of causation without supporting factual allegations to meet his burden.  Pl.'s Opp'n at 9–10.  Plaintiff is mistaken as to the applicable pleading standard, and the lack of any factual allegations that would support a plausible inference of causation prevents his complaint from stating a claim for retaliation.

Title VII forbids an employer from retaliating against an employee because the employee engaged in protected activity by opposing unlawful employment practices or by bringing discrimination charges under Title VII. *See* 42 U.S.C. § 2000e-3(a).  "Claims of retaliation under Title VII are governed by the same *McDonnell-Douglas* burden-shifting analysis applicable to discrimination claims[,]" *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019),

16

and, thus, "[a]t the first step of *McDonnell Douglas*, an employee must show a prima facie case

of discrimination," *Mawakana v. Bd. of Trustees of Univ. of Dist. of Columbia*, 926 F.3d 859,

866 (D.C. Cir. 2019).  To establish a *prima facie* unlawful retaliation claim, the plaintiff must

show: (1) that he made a charge or opposed a practice made unlawful by Title VII; (2) that the

employer took a materially adverse action against him; and (3) that the employer took the action

because of the plaintiff's protected conduct.  *Allen v. Johnson*, 795 F.3d 34, 38–39 (D.C. Cir.

2015).  The required causal relationship between a materially adverse action and protected

activity may be inferred through temporal proximity between the protected act and the adverse

employment action or through disparate treatment of similarly situated employees.  *See Walker*

*v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015); *Taylor v. Solis*, 571 F.3d 1313, 1322–23

(D.C. Cir. 2009).  If the causation element is predicated on temporal proximity alone, however,

that proximity must be "very close."  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273

(2001) (internal quotation omitted); *see also Iyoha*, 927 F.3d at 574 (D.C. Cir. 2019) (noting that

"[a] plaintiff can establish the 'causation' element of the prima facie case by showing a tight

temporal proximity between protected activity and an adverse employment action," but "'only

where the two events are very close in time' does temporal proximity support an inference of

causation."  (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007))).

The complaint presents no allegations of direct evidence indicating retaliatory intent as

the reason for plaintiff's non-promotions and therefore relies on circumstantial evidence to

establish a prima facie case.  *See generally* Compl.  In opposing dismissal, plaintiff invokes the

outdated *Conley* pleading standard, arguing that because his complaint includes an allegation

regarding causation, he has met his burden to make out a *prima facie* case of retaliation.  *See*

Pl.'s Opp'n 9–10; Compl. ¶ 45 (alleging that "[t]he aforementioned non-promotions between

17

2010–2014 against the Plaintiff were because of the Plaintiff's EEO protected activity").  Such

conclusory assertions of causation are simply not sufficient.  *See Twombly*, 550 U.S. at 557, 562–

63; *see also Iqbal*, 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  (quoting *Twombly*, 550 U.S. at 557));

*Jones v. Horne*, 634 F.3d 588, 596 n.4 (D.C. Cir. 2011) (finding plaintiff's "reliance

on *Conley* . . . and its somewhat more lenient standard governing motions under Rule 12(b)(6), is

misplaced" since "[t]he Supreme Court abrogated the *Conley* formulation in" *Twombly*).

The complaint lacks any sufficient factual allegation to support causation.  Plaintiff

alleges only that, first, the retaliation was over plaintiff's administrative action in 2006 for failure

to promote and his two subsequent administrative actions in 2013, and, second, the non-

promotions at issue took place between 2010 and 2014.  *See* Compl. ¶¶ 44, 45.  Determining the

precise temporal proximity between these two sets of events is challenging, if not impossible,

given the lack of specific dates.  Yet, obviously, the 2006 protected activity occurred at least four

years prior to any of the alleged adverse actions—hardly the "very close" temporal proximity

required to imply a causal relationship.  *See Clark Cnty. Sch. Dist.*, 532 U.S. at 273.

Additionally, since an employer could not possibly retaliate for an action that has yet to occur,

any retaliation for plaintiff's 2013 complaints could only have occurred through the remainder of

that year through 2014, yet plaintiff's narration of the events surrounding his non-promotions

make absolutely no reference to any specific promotion he was denied between 2013 and 2017.

*See* Compl. ¶¶ 18–32.  Finally, plaintiff offers no indication that the unnamed individuals who

took the alleged retaliatory actions had any knowledge that plaintiff had engaged in protected

activities, further undercutting any plausible inference of causation.  *See generally* Compl.

Plaintiff's Complaint does not adequately state a claim for retaliation, as no plausible inference can be drawn of a causal relationship between his identified protected activity and the non-promotions.  His retaliation claim must therefore be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED, and plaintiff's motion for summary judgment is DENIED as moot.  An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  November 8, 2022

_____
BERYL A. HOWELL
Chief Judge